RECEIVED

AUG - 9 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

WANDA SHACKLETON AND
MARK SHACKLETON

CIVIL ACTION NO. 1:13-CV-03135

VERSUS

CHIEF JUDGE DRELL

UNITED STATES OF AMERICA,
et al.

MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

Plaintiffs Wanda and Mark Shackleton filed a tort claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.* ("FTCA") on November 26, 2013 against the United States of America ("United States").[1] Plaintiffs seek damages for personal injuries sustained by Wanda Shackleton ("Shackleton") while working at the U.S. Army Garrison at Ft. Polk, Louisiana ("Ft. Polk") on June 6, 2012.

Shackleton was employed by Northrup Grumman Enterprise Management Services Corp. ("Northrup Grumman") as a tool room attendant. Northup Grumman was an independent contractor performing work at Ft. Polk pursuant to a contract

---

[1] Plaintiffs allege in their complaint that they filed an administrative claim with the Department of the Army, but never received a final disposition and deemed their claim exhausted after six months. SeeError! Main Document Only. 28 U.S.C. 2675(a).

with the U.S. Army.[2]  Northrup Grumman maintained and repaired Army vehicles at Ft. Polk.

Shackleton alleges that she was working in a tool room at Fort Polk when she opened a sliding drawer in a "Stanley Vidmar" tool chest.  The tool chest suddenly tipped over, pinning her body against another tool chest and injuring her.

The United States answered the complaint and named Northup Grumman as a third party defendant (Doc. 4), pursuant to the contract.  Northrup Grumman then filed a motion to dismiss the third-party complaint, arguing that, under Louisiana law, an employer who pays worker's compensation is immune from tort liability (except intentional torts) and is also immune from a third-party's claim for tort contribution or indemnity, unless there is a specific contractual provision permitting the claim.  The United States and Northrup Grumman filed a joint motion to dismiss the United States's third-party complaint (Doc. 13).  The United States stipulated that it would dismiss its third-party complaint and all third-party claims against Northrup Grumman, with prejudice (Doc. 19).  The Court granted the motion and dismissed all third-party claims against Northrop Grumman (Doc. 20).

Northrup Grumman and the Insurance Co. of the State of Pennsylvania ("Insurance Co.") then intervened in the suit (Docs. 26, 30) and filed a complaint against the United States and Shackleton to recover worker's compensation benefits

_____

[2] Plaintiffs stipulated these facts at the April 20, 2016 hearing.

paid after the accident (Doc. 31). The United States filed a motion to dismiss the Intervenors' complaint for lack of jurisdiction under the FTCA (Doc. 35) which was denied (Doc. 43).

The United States then filed a motion to dismiss the Shackletons' complaint for lack of subject matter jurisdiction under the FTCA and for failure to state a claim on which relief may be granted (Doc. 53). The United States contends that both the "independent contractor exception" and the "discretionary function exception" to the FTCA apply in this case. Alternatively, Defendant contends that it contractually delegated its responsibility for workplace safety to the contractor, and that it is not liable for Shackleton's injuries under a theory of premises liability. The Shackletons responded to the motion (Doc. 64), and the United States replied (Doc. 65).

At an April 20, 2016 hearing on the motion, Plaintiffs stipulated they do not have any evidence to support their contentions that employees of the United States installed the Stanley Vidmar tool cabinets or, after proper installation, removed the bolts that prevented the tool cabinets from tipping over. Plaintiffs further stipulated that they do not have any evidence to show that employees of the United States: (1) failed to cause the Stanley Vidmar tool chests to be installed properly; (2) failed to have and carry out adequate inspection procedures; (3) failed to detect that the tool chests were not bolted to the floor (or each other); or (4) failed to warn Shackleton that the tool chests were not bolted to the floor.

Plaintiffs maintain that Defendant was actively negligent in failing to provide Shackleton a safe place to work, failing to exercise due care, and violating mandatory

workplace safety and inspection regulations and rules. Plaintiffs' claims rest—entirely and solely—upon the possibility that the United States may have installed the told chest and, at that time, failed to bolt the told chest to the floor. To their credit, however, Plaintiffs freely admit there is presently no evidence that the United States installed the tool chest or failed to bolt it to the floor. There is also no evidence of what else may have occurred after installation—for example, whether the United States, Northrup Grumman, or another contractor removed the bolts or moved the tool chest.

The United States's motion to dismiss (Doc. 53) is now before the Court for disposition.

## Law and Analysis

I.    Subject matter Jurisdiction

Federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. See Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court. Coury, 85 F.3d at 248.

A court may dismiss for lack of subject matter jurisdiction on any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. See Robinson v. TCI/US West Communications, Inc., 117 F.3d 900 (5th Cir. 1997). Where subject matter

4

jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumption of truthfulness attaches to the plaintiff's allegations. Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

The United States contends it is not liable for Shackleton's injuries because it is immune from liability. The FTCA waives the United States' sovereign immunity for the torts of federal employees by granting the federal district courts jurisdiction over suits for damages "caused by the negligent or wrongful act or omission of any employee of the Government. . . ." The FTCA also limits the United States's liability in certain respects. See Aretz, 604 F.2d 417, 426 (5th Cir. 1979), on rehearing, 635 F.2d 485 (5th Cir. 1981).

Under the FTCA, Congress has granted consent for the government to be sued for acts committed by an employee of the government while acting within the scope of his office or employment. See 28 U.S.C. § 1346(b); see also Longino v. U.S. Dept. of Agric., 912 F.Supp.2d 424, 429 (W.D. La. 2012) (citing Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998)). Under the FTCA, the government may be liable if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. See Longino, 912 F.Supp.2d at 429 (citing United States v. Olson, 546 U.S. 43, 44 (2005)); see also 28 U.S.C. §§ 1346(b)(1), 2674.

Several exceptions limit the waiver of sovereign immunity. See 28 U.S.C. § 2680; Gibson v. U.S., 809 F.3d 807, 811 (5th Cir. 2016). Also, the United States cannot be held vicariously liable for the negligent acts of independent contractors.

5

See <u>Lathers v. Penguin Industries, Inc.</u>, 687 F.2d 69, 72 (5th Cir. 1982); <u>see also</u> 28 U.S.C. § 2671.

A. <u>Independent Contractor Exception</u>

The United States contends the independent contractor exception applies in this case because Northrup Grumman is an independent contractor, a fact that does not appear to be disputed by Plaintiffs. Plaintiffs argue that Northrup Grumman was not responsible for the installation of the relevant tool chests.

Under the FTCA, the government has waived immunity and agreed to be sued (under a theory of vicarious liability) for acts committed by an employee of the government while acting within the scope of his office or employment. <u>See</u> 28 U.S.C. § 1346(b). Independent contractors (and their employees) who are employed by agencies of the United States are excluded from the government's waiver of immunity under the FTCA as follows: the FTCA applies only to negligent acts or omission by an employee of the United States, <u>see</u> 28 U.S.C. § 1346(b); an employee of the United States includes officers or employees of any federal agency, <u>see</u> 28 U.S.C. § 2671; and the term "Federal agency" does not include any contractor employed by the United States, <u>see</u> <u>id.</u> <u>See also</u> <u>Logue v. U.S.</u>, 412 U.S. 521, 532-32 (1973); <u>Lathers</u>, 687 F.2d at 72; <u>Robbins v. Computer Sciences Corp.</u>, 486 F.Supp.2d 581, 585 (S.D. Miss. 2007).

The independent contractor exclusion of § 2671 shields the United States from tort liability arising from the performance of duties that were reasonably delegated to a contractor. <u>Berkman v. U.S.</u>, 957 F.2d 108, 113 (4th Cir. 1992). However, the fact that an independent contractor may have been responsible for tortious conduct

6

does not relieve the United States from liability where federal employees *also* may have caused or contributed to the alleged tort. <u>Berkman</u>, 957 F.2d at 114.

Defendant argues that Northrup Grumman not only leased the property "as is" from Defendant, but also contractually accepted responsibility for workplace safety and, therefore, the "independent contractor exception" applies to the Shackletons' claims. However, for that exception to apply, Plaintiffs would have to allege the United States is *vicariously* liable for a negligent act or omission of Northrup Grumman, and they have not done so. Instead, Plaintiffs allege the United States is *directly* liable for the negligence of its own employees who caused the injury to Shackleton. Therefore, the independent contractor exclusion is not applicable to Plaintiffs' claims.[3] <u>See</u> <u>Carroll v. U.S.</u>, 661 F.3d 87, 93 (1st Cir. 2011) (citing <u>Wood v. U.S.</u>, 290 F.3d 29, 36 n.4 (1st Cir. 2002)); <u>see also</u> <u>Winters v. United States</u>, 127 F.Supp.2d 814, 817 n.2 (S.D. Tex. 2001) ("Plaintiff... in seeming recognition of [the contractor exception to the FTCA], has attempted to craft a case based upon NASA's own direct negligence.... The Court, therefore, will, like Plaintiff, focus its analysis on the discretionary function exception.").

<u>B. Discretionary Function Exception</u>

---

[3] Defendant's argument that Northrup Grumman is contractually liable for the premises and workplace safety (under Louisiana law) will be considered after the issue of subject matter jurisdiction is resolved.

Defendant contends the Army's decision to contractually delegate safety responsibility to Northrup Grumman falls within the discretionary function exception.

Section 2680(a) sets forth the "discretionary function exception" to the United States's liability under the FTCA: "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The Supreme Court has established a two-part test to determine whether an agency's conduct qualifies as a discretionary function or duty: (1) the Court must assess whether the challenged conduct was discretionary in nature, an act that involves an element of judgment or choice; and (2) if the Court finds the agency's conduct qualifies as discretionary, then it considers whether the actions taken are susceptible to policy analysis. See Gibson, 809 F.3d at 811-812 (citing United States v. Gaubert, 499 U.S. 315, 322–25 (1991)).

1.

Under step one of the analysis, the discretionary function exception does not apply if the challenged action in fact violated a federal statute, regulation, or policy. If a statute, regulation or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the

8

exercise of its authority is discretionary.  Gibson, 809 F.3d at 812 (citing Spotts v. United States, 613 F.3d 559, 567 (5th Cir. 2010)).   To be non-discretionary, a policy must prescribe a specific course of action for an agency or employee to follow.  Gibson, 809 F.3d at 812 (citing Lopez v. U.S. Immigration and Customs Enf't, 455 Fed.Appx. 427, 433 (5th Cir. 2011), cert. den., 133 S.Ct. 138 (2012)).

The United States alleges generally that, if Government employees decided not to bolt the tool chests to the floor (which it does not concede), that decision was a discretionary one grounded in policy considerations of cost.

Even assuming the United States has made a valid argument that the decision to not bolt the tool chests to the floor was a discretionary one, the United States has not shown that such a decision was the type the discretionary function exception was designed to shield.

2.

Under step two of the analysis, even assuming the challenged conduct involves an element of judgment and does not violate a nondiscretionary duty, the Court must still decide whether the judgment is of the kind that the discretionary function exception was designed to shield.  See  Gibson, 809 F.3d at 813, citing Spotts, 613 F.3d at 568.

The discretionary function exception was enacted to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.  See  Gibson, 809 F.3d at 813 (citing in re Katrina Canal Breaches Litig., 696 F.3d 436, 449 (5th Cir. 2012), cert.

den., __U.S.__, 133 S.Ct. 2855 (2013)). The exception, properly construed, protects only governmental actions and decisions based on considerations of public policy, see Gibson, 809 F.3d at 813 (citing Berkovitz v. United States, 486 U.S. 531, 537 (1988)), and only shields those acts that are based on the purposes that the regulatory regime seeks to accomplish, see Gibson, 809 F.3d at 813 (citing Gaubert, 499 U.S. at 325 n.7). The inquiry is whether the decision-maker's action was susceptible to policy analysis. See Gibson, 809 F.3d at 813 (citing In re FEMA Trailer Formaldehylde Prods. Liab. Litig. (La. Plaintiffs), 713 F.3d 807, 810 (5th Cir. 2013)). The mere association of a decision with regulatory concerns is not enough; exempt decisions are those fraught with public policy considerations. Gibson, 809 F.3d at 816 (citing Cope v. Scott, 45 F.3d 445, 449 (D.C.Cir. 1995)).

In Gibson, 809 F.3d at 814, the Fifth Circuit noted several areas in which the discretionary function exception is not applicable: (1) the Government's decisions about routine property maintenance, decisions with which any private landowner would be concerned, are not susceptible to the kind of policy analysis shielded by the discretionary function exception (citing Gotha v. United States, 115 F.3d 176, 181-82 (3d Cir. 1997)) (the Navy's failure to provide a stairway, railing, and lighting on a steep path was a "mundane, administrative, garden-variety, housekeeping problem" that was far removed from the policies applicable to the Navy's mission (at the Atlantic Fleet Weapons Training Facility) to insure that that U.S. Navy and allied forces can safely train with weapons in a realistic warfare environment); (2) budgetary constraints on their own are often an insufficient policy goal to trigger the

exception's protections, (citing O'Toole v. United States, 295 F.3d 1029, 1035-37 (9th Cir. 2002) (the government's decision to forego needed repairs and maintenance to an irrigation system-maintenance that would be expected of any landowner-for fiscal reasons is not the kind of policy decision that the discretionary function exception protects); (3) where the Government is aware of a specific risk of harm and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures, the discretionary function exception does not apply (citing S.R.P. ex re. Abunabba v. United States, 676 F.3d 329, 340-42 (3d Cir. 2012) (National Park Service management policies were implicated in the content of a warning sign and the government was not aware of the specific risk of a barracuda attack on shoreline swimmers); and (4) the discretionary function exception is particularly inapt where the Government acts as the operator of a business (citing Salim v. United States, 382 F.2d 240, 241-42 (5th Cir. 1967), and Gourgeot v United States, 372 Fed. Appx. 489 (5th Cir. 2010)).

The Fifth Circuit also noted the areas in which the discretionary function exception has been found to be applicable: (1) the regulation and oversight of savings and loan associations by the Federal Home Loan Bank Board (citing Gaubert, 499 U.S. at 332-34); (2) the release of vaccine lots by the FDA (citing Berkovitz, 486 U.S. at 545-48); (3) the enforcement and implementation of airline safety standards by the FAA (citing U.S. v. S.A. Empresa d. Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814-20 (1984)); (4) when the Government acts as landowner of wilderness, certain kinds of maintenance decisions have been found to contain multiple policy

considerations (citing <u>Theriot v. United States</u>, 245 F.3d 388 (5th Cir. 1998), and <u>Hix</u> <u>v. U.S. Army Corps of Eng'rs</u>, 155 Fed.Appx. 121, 127 (5th Cir. 2005)); (5) Corps of Engineers dredging projects to maintain the navigability of the Mississippi River involve quintessentially discretionary judgments that are susceptible to policy analysis (citing <u>MS Tabea Schiffahrsgesellschaft MBH & Co. KG v. Bd. of Comm'rs</u> <u>of Port of New Orleans</u>, 636 F.3d 161, 167-168 (5th Cir. 2011); and (6) FEMA's decisions to provide emergency housing units that emitted formaldehyde were susceptible to policy analysis because the agency had to consider what would provide the safest, most feasible, convenient, and readily available housing assistance (citing <u>FEMA Trailer Formaldehyde (La. Plaintiffs)</u>, 713 F.3d 807, 810 (5th Cir. 2013). <u>See</u> <u>Gibson</u>, 809 F.3d at 814-816.

In this case, the government is providing for the repair of Army vehicles by contracting with Northrup Grumman to provide the repair services in a building owned by the Government.   That building contained tool chests owned by the government which, along with the building, were provided for Northrup Grumman employees to use.

In <u>Gibson</u>, the Government argued the discretionary function exception should apply because FEMA's "policy" of allowing a FEMA employee to provide a ladder for customer access to FEMA trailers that were for sale was grounded in a policy to save money for future projects by requiring customers to find their own way into the trailers.  <u>See</u> <u>Gibson</u>, 809 F.3d at 812-13, 816.  The Fifth Circuit did not apply the discretionary function exception, finding there was "little in common between the

judgments of maintaining thousands of miles of waterways and deciding how to allow customers access to trailers being offered for sale." <u>Gibson</u>, 809 F.3d at 816 (citing <u>MS Tabea</u>, 636 F.3d at 167-168).

In <u>Winters</u>, 127 F.Supp.2d at 818, which the Government relies on heavily in its brief, NASA contracted for base support services to be provided by BRSP, Winters' employer. NASA provided facilities for BRSP to use at the Johnson Space Center Facility, including an allegedly defective ladder. Winters used the defective ladder, was injured, and filed a federal tort claim action. The district court found that NASA "is in the business of putting people into space" and is not in the business "of retrieving file boxes or monitoring ladder safety," so it hired an independent contractor to perform many administrative functions.

The district court stated that NASA's decision to exercise its discretion to provide uninspected property to a contractor and to delegate responsibility for workplace safety to the contractor was cost efficient and clearly grounded in public policy, and compared the case to those in which a government agency disposes of property that is known to be dangerous. <u>Winters</u>, 127 F.Supp.2d at 820. The Fifth Circuit's subsequent decision in <u>Gibson</u> (which also involved a defective ladder), clarifies its position that decisions which are not grounded in any "policy" other than cost-efficiency are not the type of policies that drive the regulatory scheme of the agency.   The Fifth Circuit also stated that a decision involving "mundane, administrative, garden-variety housekeeping problems," such as the one in <u>Winters</u> (which the court characterized as administrative, having little to do with launching

the Space Shuttle or operating the International Space Station), are far removed from the policies applicable to the agency's mission.  Clearly, the reasoning and holding in Winters do not survive the Fifth Circuit's recent opinion in Gibson.

Moreover, the United States argues that the issue is whether the discretionary function exception applies to the Army's decision to employ an independent contractor and contractually delegate responsibility for workplace safety to the contractor.  However, the real issue before this Court is whether the discretionary function exception applies to the Army's (presumed) decision to not have the tool chests bolted to the floor.  That is the decision that directly caused Shackleton's injury, regardless of who made the decision.  The United States's argument concerning contractual delegation of liability is appropriately addressed after the issue of subject matter jurisdiction is decided.

To determine whether the discretionary function exception applies, the Court must decide whether the decision to not bolt the tool chests to the floor is the kind that the discretionary function exception was designed to shield.  Stated otherwise, the issue is whether the decision to not secure the tool chests to the floor, in accordance with the manufacturer's instructions and warning, was "fraught with public policy considerations."  It was not.  The decision not to bolt the tool chests to the floor was not based on the purpose that the regulatory regime of the Department of the Army seeks to accomplish, of "organizing, equipping, and training forces for the

14

conduct of prompt and sustained combat operations on land."[4]   Ft. Polk's missions statement is to "train soldiers and grow leaders to deploy, fight, and win," and to "train brigade combat teams for war."[5]   See Gibson, 809 F.3d at 813.   Instead, it was a routine property maintenance decision that involved only a garden-variety remedial measure, and is not susceptible to policy analysis.   To paraphrase the Fifth Circuit in Gibson, 809 F.3d at 816, there is little in common between the judgments of training armed forces for war, and deciding whether or not to bolt large tool chests to the floor to prevent tipping.

Therefore, the discretionary function exception is not applicable in this case.

II.   Defendant's Liability under Louisiana Law

The parties agree they do not know why the tool chests were not bolted to the floor or who was responsible for them not being bolted to the floor – whether government employees failed to bolt them or whether either government employees or a private contractor's employees later unbolted them.   Therefore, the parties

---

[4] According to the U.S. Army website, https://www.army.mil/info/organization/:

The U.S. Army's mission is to fight and win our Nation's wars by providing prompt, sustained land dominance across the full range of military operations and spectrum of conflict in support of combatant commanders. We do this by:
    -Executing Title 10 and Title 32 United States Code directives, to include organizing, equipping, and training forces for the conduct of prompt and sustained combat operations on land.
    -Accomplishing missions assigned by the President, Secretary of Defense and combatant commanders, and transforming for the future.

[5] See http://www.jrtc-polk.army.mil/MissionStmt.html.

15

concede they cannot show that any particular party was negligent in that respect. The United States argues, however, that it cannot be held liable under a theory of general premises liability.   Defendant further argues that it cannot be held liable under a negligence theory because Northrup Grumman contractually assumed liability for workplace safety and, therefore, it is liable for any injuries caused by workplace accidents.

Premises Liability

The law of the place where the act or omission occurred is applicable in an FTCA action.  See Olson, 546 U.S. at 44; see also 28 U.S.C. §§ 1346(b)(1), 2674.  In this case, that is Louisiana law.

For premises liability, Louisiana law provides that "an owner or person having custody of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition on the premises and either correct that condition or warn potential victims of its existence."[6]  See Gibson, 809 F.3d at 815 (citing Daigle v. City of Shreveport, 46,429 (La. App. 2d Cir. 10/5/11), 78 So.3d 753, 765, writ den., 2011-2472 (La. 2/3/12), 79 So.3d 1027).

In Longino v. U.S. Dep't of Agric., 912 F.Supp.2d 424, 428-29 (W.D. La. 2012), this Court examined its subject matter jurisdiction in an FTCA case alleging general premises liability for a low-hanging power line.  The court found a Circuit split in the

_____

[6] It is well settled that the United States cannot be held strictly liable under the FTCA.  See Laird v. Nelms, 406 U.S. 797, 798-99 (1972).  See also Prier v. U.S. Postal Service, 2015 WL 3555887 (W.D. La. 2015).  Moreover, Louisiana law no longer imposes strict liability on property owners.  La.C.C. art. 2317.1.

16

determination of subject matter jurisdiction on which the Fifth Circuit has never ruled. See id; see also Wiggins v. U.S., 2009 WL 2176043 (E.D. La. 2009) (collecting cases). This Court, in Longino, adopted the most recent test from this Division, set forth in Janice v. United States, 2008 WL 269530, *6 (W.D. La. 2008), and applied Louisiana law to determine if a plaintiff may state a viable claim under the FTCA for general injury in conjunction with a premises in Louisiana:

> The unreasonable risk or unreasonably dangerous condition must be either:
>> (1) caused by the negligent or wrongful act or omission of a federal employee, or
>>
>> (2) the unreasonably dangerous condition was known to a government employee, yet he or she failed to act (i.e. a failure to warn of or correct the unreasonably dangerous condition).

See Longino, 912 F.Supp.2d at 428-29.

In Longino, 912 F.Supp.2d at 428-29, the plaintiffs contended the United States employees had actual knowledge of a low-hanging power line at Camp Livingston on the date a grass fire occurred. Longino was electrocuted and killed while horseback-riding at Camp Livingston two weeks later. This Court found the discretionary function exception did not apply where the plaintiffs contended the United States employees had actual knowledge of a low-hanging power line at Camp Livingston on the date a grass fire occurred. The court found the federal employees failed to take any remedial action, resulting in Longino's death by electrocution while horseback-riding at Camp Livingston two weeks later.

17

In Prier, 2015 WL 3555887 at 2, which involved a slip and fall in a post office, the court found it did not have subject matter jurisdiction under the FTCA because there was no evidence that any employee of the USPS committed a negligent or wrongful act or omission that caused an unreasonably dangerous condition, or that a government employee knew of an unreasonable condition yet failed to act.

In this case, Plaintiffs have conceded that the United States could be liable to them only if it created the dangerous condition or knew of the dangerous condition and had to duty to correct it but failed to do so.  Again, the parties agree they do not know who installed the tool chests, whether the tool chests were ever bolted to the floor, or whether the tool chests were properly affixed on installation but the bolts were later removed (and if so, by whom).

According to both parties in this case, there is no evidence that a United States employee committed a negligent or wrongful act or omission that caused the tool chest to tip over.  Likewise, there is no evidence that a government employee knew the tool chests were not properly affixed and failed to act.

Therefore, Plaintiffs have not stated a claim for general premises liability against the United States under the FTCA and Defendant's motion to dismiss should be granted.

Contractual Liability

The United States also argues that it is not liable to Plaintiffs because Northrup Grumman contractually assumed liability for the premises and for

18

workplace safety. Plaintiffs contend the United States cannot delegate responsibility for unsafe conditions on its property.

Since Plaintiffs have not stated a claim for general premises liability against the United States, there is no liability for Northrup Grumman to have contractually assumed in this case. This argument is moot.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendant's motion to dismiss (Doc. 53) be GRANTED and that Plaintiffs' action be DENIED AND DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14)** days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except

19

upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____ day of August 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge

20